64 Cal.Rptr. 753]

[Civ. No. 32028. Second Dist., Div. Five. Dec. 14, 1967.]

JOHN D. SHEETS, Petitioner, v. THE SUPERIOR COURT
OF LOS ANGELES COUNTY, Respondent; FRANK
J. MASIN et al., Real Parties in Interest.

(1)

Brock & Rykoff, J. Paul Spector and Richard L. Rykoff for Petitioner.

No appearance for Respondent.

Perry Bertram for Real Parties in Interest.

**4**

McCOY, J. pro tem.*—In August 1960 John Sheets and Frank Masin entered into a limited partnership agreement for the development of certain land owned by Sheets. The original agreement was replaced by a new agreement early in 1962. Acting under this latter agreement Masin supervised the construction of an apartment building which became operative in January 1963. Early in 1966 Sheets, as limited partner, came to the conclusion that all was not well, and filed an action in the respondent court against Masin and his wife for injunctive relief and dissolution of the partnership and an accounting, and for damages for breach of the partnership agreement and for fraud.

As the litigation progressed following the filing of an amended complaint in June 1966, Masin served some interrogatories on Sheets. Sheets having answered some of these interrogatories and objected to others, Masin sought and obtained an order from the respondent court requiring Sheets to answer a large number of the interrogatories to which he had objected. Sheets thereupon initiated the present proceedings, claiming that in making that order the court had abused its discretion and had acted in excess of its jurisdiction.

The amended complaint contains eight alleged counts or causes of action, all arising out of Masin's acts as general partner. The first two seek an injunction prohibiting the foreclosure of the deeds of trust executed on behalf of the partnership to secure two partnership notes payable to Masin and his wife. By his third, fourth and fifth causes of action Sheets seeks a dissolution of the partnership and an accounting, and the appointment of a receiver. The sixth and seventh are for damages for breach of contract and fraud, while the eighth is for declaratory relief.

In order to resolve the problem before us it is necessary to look to Sheets' principal complaints with respect to Masin's acts as set out in the amended complaint. It is there alleged that after the completion of the apartment units in December 1962, they were operated and managed on behalf of the partnership by Masin as the general partner. In May 1965, Masin as general partner executed a promissory note in the face amount of $25,000 payable in full on January 1, 1966, with himself and his wife Sonja as payees, together with a deed of trust of the partnership property as security for the note. In January 1966 Masin recorded a notice of default and election

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

to sell under this deed of trust, alleging that the partnership had failed to pay the installments of principal and interest due on January 1, 1966. Previously, on January 7, 1964, Masin as general partner had executed a similar note in the sum of $85,000 payable in full on January 1, 1967, to Masin and his wife, secured by a trust deed of the partnership property. In April 1966 Masin recorded a notice of default and election to sell under this deed of trust, setting forth the failure of the partnership to make the payments of principal and interest due January 1, 1966.

With respect to both of these transactions Sheets alleges that Masin's acts as the general partner violated his fiduciary duties and were in breach of the agreement, in that under the agreement Masin was authorized to borrow money on the security of the partnership property only in the event that the proceeds of the permanent financing loans were not sufficient to cover the total cost of the improvements, whereas the monies represented by the two notes were advanced by Masin for operational expenses and to pay taxes. He further alleges that under the agreement Masin was obligated as a matter of law to advance the amount necessary for operating expenses as a capital contribution, and that, therefore, the notes did not properly represent an obligation of the partnership. Finally he alleges that under a contemporaneous oral agreement any such contributions by Masin were to be without interest, and that in any event Masin could have borrowed the necessary monies elsewhere for a longer period of time and at less than the 10 percent interest provided in the notes.

Sheets further alleges that even if the two notes were properly executed by Masin on behalf of the partnership, they were not in default (1) in that the partnership income was at all times adequate to pay the principal and interest of the loans, but that Masin "has diverted partnership funds to his own use and benefit rather than paying the principal and interest payments and the taxes upon the partnership real property. That but for the diversion of funds as aforesaid, no breach or default in the terms and conditions of said promissory note[s] and trust deed[s] would have occurred" and (2) in that the money necessary to pay the obligations evidenced by the notes is "readily available," but that Masin has failed and refused to make the necessary arrangements to satisfy these obligations, in violation of his fiduciary duty to the partnership.

Elsewhere with respect to the several counts of the amended

complaint it is alleged that Masin diverted partnership funds to his own use; that the books and records of the partnership do not accurately and correctly reflect the financial transactions and condition of the partnership; and that defendant diverted partnership property to other construction projects, all in violation of his fiduciary relation as the general partner to the detriment of the partnership and Sheets' interest therein.

In answer to some preliminary interrogatories Sheets admitted that in February 1967 he had employed one Danziger, a certified public accountant, to inspect the partnership books, and that Danziger had made a written report of the result of his inspection. He also admitted that he had employed one Edelson as an "estimator" to examine certain partnership records relating to the construction, and that Edelson had made an oral report "indicating an estimate of one or more phases of the construction of the Tropicana Apartments."

With respect to Danziger, the certified public accountant, Sheets was asked, in substance, to state in answer to interrogatories 9 and 10 whether Danziger had reported that he had found any errors, discrepancies, or false entries in the books, and if so to identify any such items and, "As to each such entry, as to which the accountant reports there to be an error or false entry" to "set forth all of the facts and information upon which he bases his report to that effect," and to "set forth what he claims should be the correct entry." Interrogatories 11, 12, 13 and 14 read as follows: "11. Has said accountant reported any facts or information which tend to support your allegations that (a) Defendant Frank J. Masin has diverted partnership funds to his own use and benefit; (b) Defendant Frank J. Masin has converted and misappropriated partnership funds to his own use by diverting monies obtained for construction loans and permanent financing to construction projects being carried on by the said defendant for his own account and benefit; (c) During the period of construction, defendant, Frank J. Masin, diverted partnership property to other construction projects. 12. With respect to any portion of interrogatory No. 11, as to which your answer is in the affirmative, state specifically what facts or information has been reported by said accountant. 13. If it is your position that any facts or information reported by your said accountant tend to support your allegations that defendant Frank J. Masin has diverted partnership funds to

his own use, state (a) The amount of funds which you contend such facts or information indicate were diverted; (b) The specific book entry or entries which relate to such funds; 14. If it is your position that any facts or information reported by your said accountant tend to support your allegations that defendant Frank J. Masin has diverted partnership property to his own use, state (a) The amount of property which you contend such facts or information indicate were diverted; (b) The specific book entry or entries which relate to such property.''

With respect to Edelson, the "estimator," Sheets was asked to state in answer to interrogatory 21, "The amount estimated [by Edelson] for each phase of the construction." Interrogatories 22, 23 and 24 read as follows: "22. Has Mr. Edelson reported any facts or information which tend to support your allegations that (a) Defendant Frank J. Masin has diverted partnership funds to his own use and benefit; (b) Defendant Frank J. Masin has converted and misappropriated partnership funds to his own use by diverting monies obtained for construction loans and permanent financing to construction projects being carried on by the said defendant for his own account and benefit; (c) During the period of construction, defendant, Frank J. Masin, diverted partnership property to other construction projects. 22.[1] With respect to any portion of interrogatory No. 21, as to which your answer is in the affirmative, state specifically what facts or information has been reported by Mr. Edelson. 23. If it is your position that any facts or information reported by Mr. Edelson tend to support your allegations that defendant Frank J. Masin has diverted partnership funds to his own use, state (a) The amount of funds which you contend such facts or information indicate were diverted; (b) The specific book entry or entries or other specific records or documents which relate to such funds. 24. If it is your position that any facts or information reported by Mr. Edelson tend to support your allegations that defendant Frank J. Masin has diverted partnership property to his own use, state (a) The amount of property which you contend such facts or information indicate were diverted; (b) The specif [sic] book entry or entries or other specific records or documents which relate to such property.''

Sheets objected to each of these interrogatories on the sole

---

[1]Note that there are two interrogatories numbered 22.

ground that they seek to invade the area of privileged communications between lawyer and client. He now contends that the order of the trial court requiring him to answer these interrogatories constitutes an abuse of its discretion because the information there sought is immune from discovery both by reason of the work product rule and by reason of the attorney-client privilege.

The contention that these interrogatories are objectionable because they call for the discovery of the work product of his attorneys is not now available to Sheets in this proceeding since he failed to object on this ground when he filed his answers and objections to the interrogatories. Section 2030 of the Code of Civil Procedure provides that a party served with interrogatories must serve and file his answers or objections thereto within 15 days after service. As noted above, Sheets' only objection to these interrogatories was based on the lawyer-client privilege.

It has long since been settled that in a proceeding such as this an appellate court will not consider objections to interrogatories which were not made within the time provided by law and which, therefore, were not before the trial court when it made its order. (*West Pico Furniture Co.* v. *Superior Court,* 56 Cal.2d 407 [15 Cal.Rptr. 119, 364 P.2d 295] ; *Coy* v. *Superior Court,* 58 Cal.2d 210, 216-217 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678].) As pointed out in the *West Pico* case and later, with emphasis in *Coy,* there is no provision in section 2030 for the subsequent filing of additional objections, once the time there fixed has expired. It follows, said the court that *"the only grounds that existed at the time the trial court made its order, and on which it could then predicate the same, were the grounds stated in [the] objections as originally filed."* The fact that, in their memorandum of points and authorities in opposition to Masin's motion, counsel for Sheets urged the application of the work products rule does not save the day for Sheets, since that argument was not addressed to any objection properly before the court.

In our opinion the court exceeded its jurisdiction in ordering Sheets to answer the foregoing interrogatories, for the reason that the information called for is immune from discovery by reason of the lawyer-client privilege.

There is no doubt that a defendant is entitled to discover by appropriate interrogatories the facts, if any, presently known to the plaintiff upon which he bases the allegations of his complaint and upon which he presently relies to

prove his case. (*Singer* v. *Superior Court*, 54 Cal.2d 318 [5 Cal.Rptr. 697, 353 P.2d 305].) Nor does it matter what language is used if it can fairly be said that that is the purpose and intent of the interrogatories. If that is the case, the plaintiff must state those facts fully, regardless of the source of his information.

In our opinion the interrogatories numbered 9 through 14 which relate to the written report of Danziger, the accountant, do not meet this test. Instead of asking Sheets directly to state the facts now known to him upon which he presently relies to prove the allegations of his amended complaint, interrogatories 9 and 10 call on him to state whether Danziger, the certified public accountant, discovered and reported any discrepancies or false entries in the books. Again, interrogatories 10 through 14 do not call for a statement of the facts on which Sheets intends to rely; instead, they call on him to state whether the accountant "reported any facts or information" which tend to support the allegations of the amended complaint, that Masin has diverted partnership funds and property to his own use. In each instance, Sheets is called on to specify any such items which Danziger may have reported.

There is no doubt that the report of the accountant, based as it is on his examination of the books of the partnership, which are themselves not privileged, is not privileged simply because it was reduced to writing and delivered to Sheets' attorney. (*San Diego Professional Assn.* v. *Superior Court*, 58 Cal.2d 194, 202 [23 Cal.Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761].) That rule, however does not apply here, since Masin does not seek the production of the report for his inspection, as he might do by an appropriate motion under section 2031 of the Code of Civil Procedure.

As we read interrogatories 9 through 14 they call on Sheets to disclose the analysis and evaluation of Danziger's report which his lawyer has made on behalf of Sheets in the course of his preparation for the trial of the case. Sheets contends that, as the record now stands, this information, as called for by these interrogatories, is protected by the lawyer-client privilege. We agree.

Section 954 of the Evidence Code provides that the client of a lawyer "has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . ." Section 952 of the Evidence Code reads: "As used in this article, 'confidential communi-

cation between client and lawyer' means information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes advice given by the lawyer in the course of that relationship.''

It is not disputed here that Danziger was retained by Sheets' lawyer to examine the books and records of the partnership, in order to advise him with respect to certain specific matters, that the examination was to enable Sheets' lawyer to determine whether or not certain approaches to the litigation were feasible or accurate. In our opinion, the lawyer's analysis and evaluation of Danziger's written report, as distinguished from the report itself, must be looked upon as a part of the advice given by the lawyer to the client in the course of his professional relationship with his client within the meaning of sections 952 and 954 of the Evidence Code.[2]

■ What we have just said with respect to interrogatories 9 through 14 applies in large part with respect to interrogatories 21 through 24 relating to the report of Edelson, the estimator. It should be noted, however, that Edelson's employment was apparently for a more limited purpose than that of Danziger, the accountant, and that his report to Sheets' lawyer was oral and not in writing. As to Edelson's employment, it appears without contradiction, from the declaration of Sheets' lawyer filed with the trial court in opposition to Masin's motion, that ''Mr. Edelson was retained by Declarant in order to advise him of certain aspects of the subject of the litigation in connection with the analysis and preparation of the matter or for settlement procedures and for trial. . . . Mr. Edelson's advice and opinion was sought by Declarant in connection with certain phases of the subject matter of this litigation and in fact, the advice and opinion sought by Declarant was developed in mutual conferencing between Mr. Danziger and Mr. Edelson with respect to the opinions and conclusions which your Declarant feels are

[2]If we were at liberty to consider the application of the work products rule, it should be noted that ''any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.'' (Code Civ. Proc., § 2016, subd. (b).)

appropriate to an adequate representation of Plaintiff in this litigation.'' In our opinion the information called for by these interrogatories is protected from discovery by the lawyer-client privilege.

Interrogatories 16 and 26 call on Sheets to state whether he intends to call either Danziger or Edelson ''as a witness to testify as an expert on your behalf.'' Sheets answered both of these interrogatories with the statement: ''I do not know.'' In seeking an order requiring Sheets to answer these interrogatories more directly, Masin contended that his answers were evasive and that it is necessary to have this information in order to determine whether the depositions of Danziger or Edelson should be taken.

In our opinion the trial court abused its discretion in ordering Sheets to state at this time whether or not he intended to call either Danziger or Edelson as a witness when the case comes on for trial. In reaching this conclusion we have taken into consideration the limited purpose for which Sheets' lawyer retained both Edelson and Danziger as outlined above. No authority has been cited to us, and we know of none, in support of Masin's contentions that Sheets should be required to answer these interrogatories categorically at this time.

*Unger* v. *Los Angeles Transit Lines,* 180 Cal.App.2d 172 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71], on which Masin relies, goes no further than to hold that a party may be required, in answer to an appropriate interrogatory, to disclose ''the identity and location of persons having knowledge of relevant facts.'' (Code Civ. Proc., § 2016, subd. (b).) The point here at issue was not involved or considered in that case. In *Kenney* v. *Superior Court,* 255 Cal.App.2d 106, 112 [63 Cal.Rptr. 84], the court had before it an order requiring the defendant in a pending action to disclose whether any experts would be called as witnesses and, if so, to identify them. The court held only that the names of the experts ''now known, possibly but not certainly to be called as witnesses,'' are discoverable, to ''enable plaintiff to investigate the qualifications of such experts and prepare for their proper cross-examination . . .'' That case is not controlling here, since Masin already knows that both Danziger and Edelson are persons who have knowledge of relevant facts and that they may be called as witnesses. Masin's attorney can take their depositions if he so desires. (Code Civ. Proc., § 2016, subd. (b).) As the case now stands, Sheets cannot be required to decide at this time whether he will call either of them as a witness in order to

enable Masin's attorney to make up his mind whether to take their depositions.

 Interrogatories 32, 33 and 34 present a somewhat different problem. It appears from the record that some time in 1963 before the present action was commenced, Sheets employed one Robert Hodge, a certified public accountant, to inspect and audit the books and records of the partnership, and that Hodge made a report of his audit. Interrogatory 32 reads: "Attached hereto as Exhibit A are photocopies of sixteen pages submitted by your attorney to comply with the Court order for inspection of the report of audit conducted in 1963 on your behalf by Robert Hodge. Do you contend that anything contained in these documents tend to support your allegation that defendant Frank J. Masin has diverted partnership funds to his own use?"[3]

Sheets objected to each of these interrogatories "on the ground that it calls for the opinion, conclusion and contention of Plaintiff, upon the ground that the answers sought do not appear reasonably calculated to lead to the discovery of admissible evidence and further upon the ground that the interrogatory does not, in substance, ask for facts but for contentions based upon facts heretofore submitted." In support of his petition, Sheets argues that these interrogatories "go beyond the proper scope of discovery since no new information can possibly result from the answers to the questions," and that "All sides have an opportunity to examine the accountant's report and the conclusions to be drawn from the report are not, it is submitted, a proper subject for inquiry."

Masin argues in reply, as he did in the trial court, that the pages of the Hodge report "appear to be no more than an auditor's work notes,"[4] and that it is necessary to the preparation of his defense to determine whether the report contains any information on which Sheets intends to rely in support of the allegations of his amended complaint.

---

[3]Interrogatories 33 and 34 read: "33. If your answer to the preceding interrogatory is in the affirmative, (a) State the amount of funds which you contend the entries in such records indicate were diverted; and (b) Identify the specific notation or entry on such records which relate to such funds. 34. If it is your position that anything contained in said records or reports tend to support your allegations that defendant Frank J. Masin has diverted partnership property to his own use, (a) State the amount of property which you contend the entries thereon indicate were diverted; and (b) Identify the specific notations or entries which relate to such property."

[4]Although a copy of the pages from the Hodge report has not been submitted to this court by either party to the dispute, Sheets does not question Masin's description of the pages referred to in the interrogatories.

In our opinion the respondent court abused its discretion in ordering Sheets to answer these interrogatories. If, as Masin's counsel say, the pages of Hodge's report which are the subject of these interrogatories are "no more than an auditor's work notes," it seems apparent that they could not constitute competent evidence of Masin's alleged diversion of partnership funds. However, we do not dispose of the question before us on that ground.

■ The fact that an interrogatory calls for an opinion and conclusion "*of itself*, is not a proper objection to an interrogatory. Such an objection may be proper when the answer is intended to have probative value, but it may not be utilized on discovery as a means of preventing a party from obtaining information which will lead him to probative facts." (*West Pico Furniture Co.* v. *Superior Court*, 56 Cal. 2d 407, 417 [15 Cal.Rptr. 119, 364 P.2d 295].) Similarly, an interrogatory calling on the party served to state whether he makes a particular contention, either as to the facts or as to the possible issues in the case, is not only proper but desirable. (*Universal Underwriters Ins. Co.* v. *Superior Court*, 250 Cal.App.2d 722, 728 [5] [58 Cal.Rptr. 870].) ■ The interrogatories here do not fall within the scope of either of these rules. On the contrary, they are more argumentative in their nature than otherwise, in that they call on Sheets' counsel to state how he interprets Hodge's report, insofar as it may be helpful to him in presenting his client's case. An answer to these interrogatories will in no way clarify the contention of Sheets, that Masin diverted partnership funds to his own use, or narrow the issues made by the pleadings. As we have pointed out above, if Masin wants to discover the facts on which Sheets presently bases that contention an interrogatory directly calling for that information will adequately serve his purpose. (*Singer* v. *Superior Court*, 54 Cal. 2d 318, 324-326 [5 Cal.Rptr. 697, 353 P.2d 305].)[5]

Let a peremptory writ of prohibition issue as prayed restraining the respondent court from enforcing its order of May 15, 1967, requiring petitioner to answer interrogatories 9 through 14, 16, 21 through 24, 26, 32, 33 and 34.

Kaus, P. J., and Stephens, J., concurred.

---

[5]What we here say with respect to the discovery of the opinions and conclusions of an expert, and the right of a party to ascertain the contentions of his adversary, either as to the facts or as to the possible issues in the case, applies equally to interrogatories 13, 14, 23 and 24.